UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTEM BIRUK, | CASE NO. C25-0779JLR |
| Plaintiff, | ORDER |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

## I.     INTRODUCTION

Before the court is Defendant The Boeing Company's ("Boeing") motion to dismiss *pro se* Plaintiff Artem Biruk's amended complaint. (MTD (Dkt. # 23); *see* Am. Compl. (Dkt. # 20); *see also* Am. Compl. Exs. A-B (Dkt. ## 20-1, 20-2); Am. Decl. (Dkt. # 21).)[1] Mr. Biruk opposes Boeing's motion. (*See* Resp. (Dkt. # 27); Memo. (Dkt.

---

[1] In ruling on Boeing's motion to dismiss, the court considers the contents of Mr. Biruk's complaint, exhibits attached to his complaint, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). Because Mr. Biruk is proceeding *pro se*, the court

# 26).)[2] To ensure the just, speedy, and inexpensive determination of this action, the court exercises its discretion to decide Boeing's motion before its noting date. *See* Fed. R. Civ. P. 1. The court has considered the parties' submissions, the balance of the record, and the applicable law. Being fully advised,[3] the court GRANTS Boeing's motion to dismiss.

## II. BACKGROUND

The instant action arises out of Boeing's termination of Mr. Biruk's employment in January 2024. On April 3, 2025, after exhausting his administrative remedies, Mr. Biruk filed a complaint in the Snohomish County Superior Court alleging he was wrongfully terminated. (*See* Compl. (Dkt. # 1-1); *see* Am. Compl. at 5 (citing Exhibits Dkt. ## 8 (sealed), 28 (redacted)) at 47 (Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination), 35 (EEOC Notice of Right to Sue Letter).)[4] Boeing timely removed the action to this District. (*See* Not. of Removal (Dkt. # 1).) Shortly thereafter, Boeing moved to dismiss Mr. Biruk's original complaint for failure to state a claim. (1st MTD (Dkt. # 6).) On July 7, 2025, the court granted Boeing's motion

---

will also consider his "Amended Declaration"—which provides "additional details and context" for his claims—as part of his complaint. (*See* Am. Decl. at 1.)

[2] The court considers Mr. Biruk's "Memorandum in Support of His Claim of Discrimination" as part of his response. (*See* Memo.)

[3] The parties do not request oral argument, and the court concludes that oral argument is not necessary to its disposition of Boeing's motion. Local Rules W.D. Wash. LCR 7(b)(4).

[4] The court may consider documents incorporated by reference in Mr. Biruk's complaint without converting Boeing's motion to dismiss into a summary judgment motion. *United States v. Ritchie,* 342 F.3d 903, 907-08 (9th Cir. 2003). As the court explained in its July 7, 2025 order, it will consider the pages of exhibits that Mr. Biruk cites to in his complaint. (7/7/25 Order at 6-7.)

to dismiss Mr. Biruk's original complaint, but granted Mr. Biruk leave to file an amended complaint that corrected the deficiencies identified in the court's order by August 8, 2025. (7/7/25 Order (Dkt. # 16) at 16.)

Mr. Biruk timely filed an amended complaint. (Am. Compl.; Am. Compl., Exs. A-B; Am. Decl.) Mr. Biruk alleges claims for (1) national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Washington Law Against Discrimination ("WLAD") (RCW 49.60.180); (2) hostile work environment under Title VII and WLAD (RCW 49.60.180); (3) discrimination under 42 U.S.C. § 1981; and (4) retaliation under WLAD (RCW 49.60.210). (*See* Am. Compl. at 3-4.)[5]

Mr. Biruk alleges that on January 2, 2024, his co-worker, Vitaly Suslov, called him a "moron" and "made degrading comments" about his Ukrainian national origin. (*See* Am. Compl. at 5; Am. Compl., Ex. A at 1.) Specifically, Mr. Biruk contends that Mr. Suslov "asserted his pro-Russian position" and said the Ukrainian language is "not real" and that "there is no such country as Ukraine." (Am. Compl., Ex. A at 1; *see id.* (alleging that Mr. Suslov "referred to opponents of the Putin regime . . . using vulgar and derogatory language").) Mr. Biruk contends these statements "exhibited bias" toward his national origin. (*Id.*)

---

[5] In his response to Boeing's motion to dismiss, Mr. Biruk also asserts claims for civil theft and "misrepresentation regarding insurance and unemployment benefits." (Resp. at 5.) Because those claims were not alleged in Mr. Biruk's amended complaint, the court does not consider those claims here. (*See generally* Am. Compl.); *see Riser v. Cent. Portfolio Control Inc.*, No. C21-5238LK, 2022 WL 2209648, at *4 n.1 (W.D. Wash. June 21, 2022) (stating that a plaintiff cannot amend his or her complaint through a response brief).

1       Mr. Biruk further alleges that, when "confronted about his behavior," Mr. Suslov
2 "attempted to shield himself from accountability by shifting blame" to Mr. Biruk. (*Id.*)
3 Mr. Biruk directs the court to certain pages of the exhibits he filed with his original
4 complaint, which he represents contain the "results of [Boeing's] internal investigation"
5 conducted by an individual named Lynn Erickson regarding Mr. Biruk's incident with
6 Mr. Suslov. (*Id.* (citing Exhibits at 216; *see* Exhibits at 215-17 (investigation report).)
7 According to the investigation report, Mr. Biruk asked Mr. Suslov if he was "ready if
8 Ukraine wins th[e] war[.]" (Exhibits at 215.) Mr. Biruk also allegedly stated that
9 Russians would be made "slaves[,]" and that "Russians are bad." (*Id.* at 215.) The
10 investigation report also states that Mr. Biruk "acknowledged" telling Mr. Suslov that
11 "Russians come into Ukrain[ian] homes and kill their wives and rape their kids[.]" (*Id.*)
12       Mr. Biruk alleges that Mr. Suslov "made false statements" and "distorted facts" in
13 connection with this investigation. (Am. Compl., Ex. A at 2.) He further alleges that Mr.
14 Suslov "later boasted" to manager Robin Thorning that he had "insulted" Mr. Biruk and
15 "took pride in his conduct," including that he had called Mr. Biruk a "very bad word."
16 (*Id.*; *see also* Am. Compl. at 5 (alleging that Mr. Suslov "pleaded guilty" to Mr. Thorning
17 following the incident).) Mr. Biruk also asserts that Mr. Suslov's "version of events
18 [wa]s a deliberate fabrication intended to get [him] terminated." (Am. Decl. at 2.) In his
19 amended complaint, Mr. Biruk contends that his "only response was to [Mr. Suslov's]
20 insults against [Mr. Biruk] and [his] country." (Am. Decl. at 2.) Mr. Biruk also asserts
21 that his manager was "not on his side[.]" (*See* Am. Compl., Ex. C (Dkt. # 20-3).) He
22 alleges that he was terminated at the end of January 2024, after the investigation was

complete. According to the investigation report, Mr. Biruk was terminated for engaging in harassment in violation of Boeing's Code of Conduct. (*See* Am. Decl. at 1-2; Exhibits at 215 (noting "Violation: Harassment (Non-Sexual)"); *id.* at 216 (noting that harassment is a violation of Boeing's Code of Conduct).)

In addition to his allegations regarding Mr. Suslov, Mr. Biruk pleads various facts without explaining where or how those facts fit into his asserted claims. For example, Mr. Biruk alleges that "problems arose from the actions of Boeing employees in building 40-02 who ignored company rules" and that Boeing and its employees were "negligent in not providing a mask" for him, despite that he "expressed dissatisfaction with its absence." (Am. Decl. at 1-2.) Mr. Biruk also alleges that an individual named Frankie was "reluctan[t]" to allow Mr. Biruk to use a "lift" in his work, and that he was subject to "swearing incidents" from individuals named Spencer, Alyssa, Scott, and Sara—behavior that his manager dismissed as "cultural." (*Id*. at 3.) These incidents led Mr. Biruk to believe that the issues he was experiencing were "not just cultural differences" but "more personal and related to [his] national origin[.]" (*Id.*)

On August 21, 2025, Boeing moved to dismiss Mr. Biruk's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* MTD.) For the reasons explained below, the court GRANTS Boeing's motion to dismiss.

### III.    ANALYSIS

The court first discusses the legal standards applicable to Boeing's motion to dismiss, and then addresses the parties' respective arguments.

### A. Legal Standards

Under Rule 12(b)(6), the court must dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief"). A Rule 12(b)(6) dismissal may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff cannot rely on "allegations that are merely conclusory[.]" *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

When considering a Rule 12(b)(6) motion, the court must accept the nonmoving party's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). The court must construe a *pro se* plaintiff's pleadings liberally and "afford the [plaintiff] the benefit of any doubt." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citation omitted).

### B. Boeing's Motion to Dismiss

Below, the court addresses the parties' arguments with respect to each of Mr. Biruk's claims in turn.

1. National Origin Discrimination Under Title VII and WLAD[6]

Title VII makes it unlawful for an employer to, in pertinent part, discharge or discriminate against an employee because of that employee's national origin. 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of discrimination, a plaintiff must plausibly plead that he or she: (1) is a member of a protected class; (2) was performing his or her job duties according to his or her employer's expectations; (3) suffered an adverse employment action; and that (4) a similarly situated individual outside his or her protected class was treated more favorably, or that other circumstances give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (describing elements in a Title VII claim). In the instant case, Mr. Biruk alleges that he is of Ukrainian national origin and that he was terminated from Boeing, therefore satisfying the first and third elements of a Title VII discrimination claim. (*See* Am. Compl.) The parties dispute, however, whether Mr. Biruk has plausibly pleaded the second and fourth elements. (*See* MTD at 6; *see* Resp. at 3; Memo. at 2.)

With respect to the second element, Boeing contends that Mr. Biruk failed to allege that he was performing his job duties according to Boeing's expectations. (MTD at 6.) In his amended complaint, Mr. Biruk alleges that he was "engaged in [his] work, diligently studying, completing required tests, and [was] fully committed to his position. (Am. Compl., Ex. A.) But these allegations do not show that Mr. Biruk was qualified for

---

[6] Because WLAD closely parallels Title VII, the court addresses Mr. Biruk's national origin discrimination claims under Title VII and WLAD together. *See Graves v. Dep't of Game*, 887 P.2d 424 (1994); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (considering plaintiff's state and federal discrimination claims together).

his position or that he was performing according to Boeing's expectations.  In his response to Boeing's motion to dismiss, Mr. Biruk argues that he was "qualified" and that he "had successfully passed the first stage of the promotion and was preparing for the second." (Memo. at 2.)  Mr. Biruk, however, cannot amend his complaint through his response brief.  *See Riser*, 2022 WL 2209648, at *4 n.1.

Even if Mr. Biruk had plausibly alleged that he was qualified for his role, however, he fails to allege sufficient facts supporting the fourth element of his national origin discrimination claim.  Here, Mr. Biruk asserts that Mr. Suslov subjected him to "degrading comments" that "exhibited [] bias" toward Mr. Biruk's national origin and that this incident would not have happened "if [Mr. Biruk] had been born in . . . another country." (Am. Compl., Ex. A.)  And in his response, Mr. Biruk asserts that he was "uniquely prohibited from recording at [the] office and subjected to disproportionate criticism[,]" (Memo. at 3), and "assign[ed] less favorable work duties compared to similarly situated employees of other national origins[,]" (Resp. at 2 (citing Exhibits at 45-70)).  But neither these assertions nor the Exhibit pages cited by Mr. Biruk allege any nonconclusory *facts* showing that these employees were indeed similarly situated or that they were treated more favorably.  Furthermore, Mr. Biruk does not allege any other circumstances giving rise to an inference of discrimination.  Indeed, his discrimination allegations center on statements made by Mr. Suslov—his coworker.  Mr. Biruk does not plead any facts showing national origin discrimination by his manager or other Boeing supervisors who were involved in the decision to terminate him.  (*See generally* Am. Compl.; Am. Compl., Exs. A-B; Am. Decl.)  Accordingly, Mr. Biruk has not plausibly

alleged the fourth element of his discrimination claim. *See Abdullah-El v. Bon Appetit Mgmt. Co.*, No. C15-1946JLR, 2016 WL 1756630, at *4 (W.D. Wash. May 3, 2016) (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).

Notably, Mr. Biruk does not allege any facts showing that he was terminated *because of* his national origin. Indeed, the facts alleged in Mr. Biruk's complaint show that he was terminated for violating Boeing's Code of Conduct in connection with the incident with Mr. Suslov. (*See* Am. Compl., Ex. A (citing Exhibits at 215-17).) Even accepting as true Mr. Biruk's allegations that Mr. Suslov made "derogatory" comments about Ukraine or made false statements in the investigation and later "boasted" to Mr. Thorning that he "insulted" Mr. Biruk (Am. Compl., Ex. A at 1-2, 5), these allegations do not link Mr. Suslov's statements *about Mr. Biruk's national origin* to Boeing's decision to terminate Mr. Biruk. And in his response, Mr. Biruk also asserts that he was "denied a fair opportunity to present his account" during his interview with Ms. Erickson and that she "inaccurately recorded and mispresented the exchange." (Resp. at 3.) But Mr. Biruk does not plead any facts showing that this alleged misconduct occurred *because of his national origin*. *See Mendy v. Larson*, No. C22-1426LK, 2025 WL 2509024, at *8 n.9 (W.D. Wash. Sept. 2, 2025) (citing cases showing that false or incorrect accusations and subsequent disciplinary action do not establish a Title VII discrimination claim in the absence of evidence that plaintiff's employer terminated plaintiff on the basis of a protected characteristic).

1    In accepting Mr. Biruk's well-pleaded allegations as true, the court concludes that he has failed to plausibly allege that Boeing terminated him because of his national origin.

### 2. Hostile Work Environment Under Title VII and WLAD

Mr. Biruk also alleges that he was subjected to a hostile work environment under Title VII and WLAD. (*See* Am. Compl. at 3-4.) The court addresses these claims together. *See Little*, 301 F.3d at 966. To state a hostile work environment claim, a plaintiff must plausibly allege that (1) the defendant subjected him or her to verbal or physical conduct based on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive working environment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "The required severity for harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 649 (9th Cir. 2021) (cleaned up and citation omitted). Additionally, in cases where a co-worker allegedly created the hostile work environment, such as in this case, the plaintiff must also show that the "the employer knew or should have known of the harassment but did not take adequate steps to address it." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001); *see also Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1164 (9th Cir. 2017) (citation omitted) (holding that an employer

may be liable for creating a hostile work environment either through the acts of a supervisor or by "failing to correct or prevent discriminatory conduct by an employee").[7]

Here, Mr. Biruk alleges that the incident with Mr. Suslov occurred over one day—January 2, 2024. (*See* Am. Compl. at 5.) Accordingly, Mr. Suslov's comments must be "proportionately more severe to make up for their relative infrequency." *Fried*, 18 F.4th at 649. Mr. Biruk asserts that Mr. Suslov "asserted his pro-Russian position," by calling Mr. Biruk a "moron," stating that the Ukrainian language is "not real" and that "there is no such country as Ukraine," and "refer[ring] to opponents of the Putin regime and independent journalists using vulgar and derogatory language." (Am. Compl., Ex. A at 1.) Mr. Biruk further alleges that Mr. Suslov's statements created an "intimidating and offensive environment[,]" and "demonstrate a clear pattern of . . . national origin harassment." (*See id.*) But denigrating or offensive utterances generally do not rise to the level of a hostile work environment, particularly when such comments are made on only one occasion. *See Fried*, 18 F.4th at 649; *see also Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (holding that "offensive and inappropriate" racial comments and gestures did not create a hostile work environment). Accordingly, these allegations do not state a hostile work environment claim.

As he did in his original complaint, Mr. Biruk alleges that he was subject to "swearing incidents[,]" without describing the details of those incidents. (*See* Am. Decl. at 3; *see* 7/7/25 Order at 12 (addressing Mr. Biruk's allegation that he was subjected to

---

[7] Similarly, under WLAD, a plaintiff must also demonstrate that the alleged harassment is imputable to his or her employer. *Antonius v. King Cnty.*, 103 P.3d 729, 732 (Wash. 2004).

"swear words").) But crass language generally will not create an actionable hostile work environment unless such conduct is sufficiently pervasive or severe. *See Kortan v. California Youth Authority*, 217 F.3d 1104, 1107 (9th Cir. 2000); *see also Fernandez v. FedEx Corp. Servs., Inc.*, No. 20-00031 HG-RT, 2021 WL 4305259, at *10 (D. Haw. Sept. 3, 2021) ("Occasional uses of profanity and yelling do not constitute severe or pervasive conduct that would support a hostile work environment claim."). Setting that aside, even if Mr. Biruk could plausibly show that the "swearing incidents" were sufficiently pervasive or severe, he alleges no facts showing that Boeing was aware of this conduct yet failed to address it. *See Swinton*, 270 F.3d at 803; *Fuller*, 865 F.3d at 1164.[8]

Additionally, in his response, Mr. Biruk asserts that he was subjected to a hostile work environment because his manager "dismissed" his complaints about "headaches caused by a lack of a respirator, and the absence of necessary tools." (Resp. at 4.) The court, however, is unaware of any legal authority providing that such conduct supports a hostile work environment claim under Title VII or WLAD.

On the allegations as pleaded, Mr. Biruk has failed to state a plausible hostile work environment claim under Title VII or WLAD.

---

[8] In his response, Mr. Biruk asserts that his manager "dismissed" his complaints about "offensive language," (*see* Resp. at 4), but it is not clear whether or not he is describing the "swearing incidents."

### 3. Discrimination Claim Under 42 U.S.C. § 1981

Mr. Biruk also asserts a § 1981 claim. Section 1981 provides that all persons "shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. In a § 1981 action, a plaintiff must show discrimination on account of race. *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989).

Here, Mr. Biruk alleges that he was discriminated against on the basis of his Ukrainian national origin. (*See* Am. Compl. at 5.) But § 1981 does not create a cause of action for discrimination on the account of national origin. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008). Consequently, Mr. Biruk cannot state a plausible § 1981 claim.

### 4. Retaliation Claim Under WLAD

Mr. Biruk also alleges a claim for retaliation under WLAD. (Am. Compl. at 4.) The applicable section provides, in pertinent part, that:

> [i]t is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210(1). To establish a *prima facie* case of retaliation under WLAD, a plaintiff must show that (1) he or she engaged in statutorily protected activity; (2) he or she suffered an adverse employment action; and (3) there was a causal link between his or her activity and the employer's adverse action. *See Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018).

1  Mr. Biruk's complaint is devoid of any allegations explaining his retaliation claim. In his response to Boeing's motion to dismiss, however, he asserts that he experienced "adverse employment actions, including termination" after he reported "toxic chemicals, workplace safety concerns, and ethical violations[.]" (*See* Resp. at 3-4.) Mr. Biruk, however, does not plead any facts connecting his termination to these activities. (*See generally* Am. Compl.; Am. Compl. Exs. A-B; Am. Decl.) Accordingly, Mr. Biruk has failed to plausibly plead a retaliation claim under WLAD.

**C.   Leave to Amend**

Ordinarily, courts must provide a *pro se* litigant with an opportunity to amend his or her complaint prior to dismissal unless amendment would be futile. *See McGurkin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992). However, a court's discretion to deny leave to amend is particularly broad where, as here, a plaintiff previously has been granted leave to amend. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (concluding amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as their original complaint).

Because Mr. Biruk asserts a national origin discrimination claim, he cannot state a claim for discrimination under 42 U.S.C. § 1981. Accordingly, amendment of that claim would be futile and the court dismisses Mr. Biruk's § 1981 claim with prejudice. As to his claims for national origin discrimination and hostile work environment under Title VII and WLAD, and his retaliation claim under WLAD, Mr. Biruk was previously granted leave to amend these claims, but his amended complaint continues to suffer from many of the same deficiencies identified in the court's July 7, 2025 order. Accordingly,

the court concludes that further amendment of these claims would be futile and dismisses these claims without prejudice and without leave to amend.

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Boeing's motion to dismiss (Dkt. # 23). The court DISMISSES Mr. Biruk's amended complaint. Specifically, the court DISMISSES Mr. Biruk's 42 U.S.C § 1981 discrimination claim with prejudice. The court DISMISSES Mr. Biruk's national origin discrimination and hostile work environment claims under Title VII and WLAD, and his retaliation claim under WLAD, without prejudice. The Clerk is DIRECTED to close this case.

Dated this 12th day of September, 2025.

JAMES L. ROBART
United States District Judge